# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| SCOTT WHITNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Docket No. 1:22-cv-00038-NT |
| | ) |
| MARK D. CASSIDY and | ) |
| MEDUXNEKEAG RAMBLERS | ) |
| SNOWMOBILE CLUB, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Before me is Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defs.' Mot. to Dismiss ("**Defs.' Motion**") (ECF No. 11). For the following reasons, the motion is **DENIED**.

## FACTUAL BACKGROUND[1]

On the morning of February 10, 2019, Plaintiff Scott Whitney was traveling southbound on a snowmobile on ITS Trail 86 in Webbertown, Maine. Compl. ¶ 5 (ECF No. 1). That same morning, Defendant Mark D. Cassidy was heading north on the trail operating a Tucker Snow-Cat groom machine (a "groomer"). Compl. ¶ 6. Mr.

---

[1] The following facts, which I accept as true on a motion to dismiss, are taken from the Complaint. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Me. Council of Atl. Salmon Fed'n v. Nat'l Marine Fisheries Serv. of the Nat'l Oceanic & Atmospheric Admin.*, 203 F. Supp. 3d 58, 75 (D. Me. 2016).

Cassidy stopped the groomer just before a blind curve at the bottom of a hill in a spot that blocked the trail but was not visible to oncoming snowmobilers. Compl. ¶ 7.

Traveling from the other direction, Mr. Whitney was not able to see the groomer blocking the trail. Compl. ¶ 7. As he approached the groomer, Mr. Whitney had to maneuver the snowmobile onto a snowbank on the side of the trail to avoid a head-on collision. But he lost control and collided with a dragger connected to the groomer, sustaining severe injuries. Compl. ¶ 8.

At the time of the accident, Mr. Cassidy worked as a trail groomer for Defendant Meduxnekeag Ramblers Snowmobile Club ("**MRSC**"). Compl. ¶ 6. MRSC is a non-profit organization involved with maintaining and grooming snowmobile trails. Compl. ¶¶ 3, 11, 15, 19. MRSC owned the groomer involved in the collision. Compl. ¶ 14.

On February 8, 2022, Plaintiff Whitney brought this lawsuit against Defendants Cassidy and MRSC. Defendants Cassidy and MRSC move to dismiss the Complaint in its entirety.

## LEGAL STANDARD

The Defendants' motion to dismiss invokes Federal Rule of Civil Procedure 12(b)(6). When evaluating a motion to dismiss, I take "as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). To be able to get past the motion to dismiss stage, the Plaintiff need not put forward "detailed factual allegations," but must offer

more than " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Plaintiff also cannot make " 'naked assertions' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.' " *Alston*, 988 F.3d at 571 (quoting *Twombly*, 550 U.S. at 570). A claim is "plausible" if the facts alleged give rise to a reasonable inference of liability. *Id.* "Plausible" means "more than merely possible." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

## DISCUSSION

The Defendants claim that they are immune from suit under Maine's Recreational Land Use Statute, which provides that occupants of land that is open to the public owe no duty of care to keep premises safe or to warn of dangerous conditions to recreational users of the land. Defs.' Mot. 3–6. The Plaintiff contends that the Recreational Land Use Statute does not protect the Defendants from the claims that he asserts. Pl.'s Opp'n to Defs.' Mot. ("**Pl.'s Opp'n**") 1–4 (ECF No. 13).

I. **Legal Background**

    A. **Maine's Recreational Land Use Statute**

In pertinent part, Maine's Recreational Land Use Statute provides:

**Limited duty.** An owner, lessee, manager, holder of an easement or occupant of premises does not have a duty of care to keep the premises

> safe for entry or use by others for recreational or harvesting activities or to give warning of any hazardous condition, use, structure or activity on these premises to persons entering for those purposes. This subsection applies regardless of whether the owner, lessee, manager, holder of an easement or occupant has given permission to another to pursue recreational or harvesting activities on the premises.

14 M.R.S. § 159-A(2).

> Section 159-A(3) deals with "Permissive Use" and states:

> [a]n owner, lessee, manager, holder of an easement or occupant who gives permission to another to pursue recreational or harvesting activities on the premises does not thereby: A. Extend any assurance that the premises are safe for those purposes; B. Make the person to whom permission is granted an invitee or licensee to whom a duty of care is owed; or C. Assume responsibility or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted even if that injury occurs on property of another person.

14 M.R.S. § 159-A(3).

There is an exception to the limitation of liability for injuries resulting from "willful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity." 14 M.R.S. § 159-A(4)(A).[2] The Recreational Land Use Statute goes on to provide that: "Nothing in this section creates a duty of care or ground of liability of injury to a person or property." 14 M.R.S. § 159-A(5).

For purposes of this case, several other provisions are relevant. First, "recreational activity" is defined to include "operating snow-traveling and all-terrain vehicles" as well as "entry of, volunteer maintenance and improvement of, use of and passage over premises" to pursue snow-traveling activities. *Id.* § 159-A(1)(B). Second,

---

[2] There are two other exceptions to the limitation of liability, but neither is applicable here. 14 M.R.S. § 159-A(4)(B) and (C).

4

"premises" include "improved and unimproved lands." *Id.* § 159-A(1)(A). Third, an "occupant" includes a "legal entity that constructs or maintains trails or other improvements for public recreational use." *Id.* § 159-A(1)(C).[3] Finally, occupants who are found to be not liable under the section will be awarded "direct legal costs, including reasonable attorneys' fees." *Id.* § 159-A(6).

### B. The Common Law Backdrop

To understand the present version of the Maine Recreational Land Use Statute, it helps to understand the common law duties that landowners and possessors owe to persons on their land. Historically, the duty that landowners[4] owed depended on the entrant's legal status. *Poulin v. Colby Coll.*, 402 A.2d 846 (Me. 1979). A landowner owed invitees, "persons present on the land through an owner's express or implied invitation, either for a purpose connected with the owner's business, or for a social visit," a duty to "exercis[e] reasonable care in providing reasonably safe premises for their use." *Id.* In contrast, a landowner owed licensees, those "who are neither passengers, servants, nor trespassers, and do not stand in any contractual relation with the owner of the premises, and are permitted to come upon the premises for their own interest, convenience or gratification," the duty to "refrain[] from wilfully, wantonly or recklessly causing [them] harm." *Id.* As to a third class of entrants—trespassers—landowners are not liable for bodily harm caused by their

---

[3] The term "occupants" was amended in 2003 to "reduce the potential exposure to liability for snowmobile trail-grooming activities . . . ." 2003 P.L. ch. 509 (emergency, effective Jan. 9, 2004).

[4] I use "landowners" as a shorthand to include not just those who actually own the land but also those who lawfully occupy it.

5

"failure to exercise reasonable care (a) to put the land in a condition reasonably safe for their reception, or (b) to carry on his activities so as not to endanger them." Restatement (Second) Torts § 333. Landowners do, however, have a duty to abstain from wantonly injuring trespassers. *See, e.g.*, *Dixon v. Swift*, 56 A. 761 (Me. 1903).

C. **The Legislative History**

Maine's Recreational Land Use Statute was originally enacted in 1961 when Maine's common law distinguished between invitees, licensees, and trespassers.[5] P.L. 1961, ch. 276 ("An Act Relating to the Liability of Landowners Towards Hunters, Fisherman, Trappers, Campers, Hikers, or Sightseers"). The original law provided that "landowners owed no duty to others who used their premises for 'hunting, fishing, trapping, camping, hiking or sightseeing.'" *Stanley v. Tilcon Maine, Inc.*, 541 A.2d 951, 952 n.2 (Me. 1988) (quoting P.L. 1961, ch. 276; R.S. ch. 37, § 152 (1954)).

The original law was overhauled in 1969[6] and 1979,[7] and amended multiple times with each change expanding the scope of protections for landowners. "One of

---

[5] In *Poulin v. Colby College*, the Maine Supreme Judicial Court abolished the traditional common law distinction between licensees and invitees. 402 A.2d 846, 851 (Me. 1979); *see also* 14 M.R.S. § 159. Accordingly, a landowner now "owes a duty of reasonable care to all those lawfully on the land." *Inkel v. Livingston*, 869 A.2d 745, 747 (Me. 2005). The only distinction that still matters, then, is whether a person is lawfully on the land or is considered a trespasser. *Id.*

[6] In 1969, the Legislature amended the law to add "snowmobiling" and "operat[ing] a snow traveling vehicle" to the list of activities. P.L. 1969, ch. 342 ("An Act Relating to Liability of Landowners to Operators of Snow Traveling Vehicles"). Later in the same session, though, the Legislature repealed that act and replaced it with an almost identical one but using the language "operation of snow traveling vehicles or recreational activities." P.L. 1969 ch. 504 §§ 21-A, 21-B.

[7] In 1979, the Legislature repealed the 1969 version of the law and replaced it with one that further expanded the covered activities and premises. P.L. 1979, ch. 253, § 1. It also moved the law from Title 12 (where it was housed within inland fish and game) to its current place in Title 14 (where it is now housed within civil court procedure) § 159-A. P.L. 1979, ch. 253, § 2; P.L. 1979, ch. 514, § 1; P.L. 1979, ch. 663, § 75.

6

the purposes of the limited liability rule of the recreational use statute [was] to encourage landowners to allow recreational use of the Maine woodlands that are rich with opportunities for hunting, fishing, and other recreational activities." *Robbins v. Great N. Paper Co.*, 557 A.2d 616–17 (Me. 1989). As originally proposed, the 1979 bill contained the following Statement of Fact section:

> The purpose of this bill is to make clear that a landowner who permits others on his land without charge to hunt, fish, hike, camp or for other recreational purposes should not be subject to liability for injuries incurred, except as may be caused by the willful or wanton action of the landowner. Someone who opens his land for recreational use by the public without charge should not be subject to greater liability than one who excludes the public from his land.

L.D. 288 (109th Legis. 1979).[8]

Although it has been amended many times throughout the years, the Recreational Land Use Statute's limitations on liability have remained constant. The limitation language that the Maine Legislature has used throughout—relieving landowners of the duty to keep the premises safe for entry and use by recreational users and the duty to warn of hazardous conditions, uses, structures or activities— and the exception to the limitation of liability for willfully or wantonly caused injuries suggest that landowners owe to recreational users the same duties as those owed to trespassers under the common law.

---

[8] Maine was not alone in enacting protections for landowners who opened their land for recreational use. In 1965, the Council of State Governments published "Suggested State Legislation" that limited landowner liability to recreational users. The preamble to the model law explained that the limitation "is done on the theory that it is not reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accommodating owner receives no compensation or other favor in return." *Gibson v. Keith,* 492 A.2d 241, 247 n.6 (Del. 1985). Currently, every state has some kind of recreational land use statute. *Sallee v. Stewart*, 827 N.W.2d 128, 138–41 (Iowa 2013) (collecting statutes).

7

### D. Cases Construing the Maine Recreational Land Use Statute

The Maine Law Court "construe[s] the immunity provision of section 159-A broadly," *Hafford v. Great N. Nekoosa Corp.*, 687 A.2d 967, 969 (Me. 1996), and has construed the exceptions to liability narrowly, *Robbins*, 557 A.2d at 616 (construing narrowly the exception for recreational users who pay consideration to use the land). *See also* Jack H. Simmons, Donald N. Zillman & Robert H. Furbish, Maine Tort Law § 8.04 (2018 LexisNexis) (collecting Law Court cases that have interpreted the Recreational Land Use Statute).

In *Dickinson v. Clark*, 767 A.2d 303 (2001), the Law Court made clear that the Recreational Land Use Statute "only limits claims that allege premises liability." *Id.* at 306. In *Dickinson,* a young girl was injured when she was cutting trees and splitting wood with her family on the property of the girl's step-grandfather. *Id.* at 304–05. The step-grandfather sought immunity under the Recreational Land Use Statute from the negligent supervision and instruction claims brought by the girl who had severed her hand when loading the log splitter. *Id.* at 305. The claims for negligent supervision and instruction on the use of the splitter were considered outside the scope of the statute. *Id.* at 306.

## II. Whether the Recreational Land Use Statute Applies Here

The Plaintiff contends that the Recreational Land Use Statute does not control here because he is not asserting a premises liability claim, and the claims he is asserting fall outside the scope of § 159-A. Alternatively, he argues that even if the Recreational Land Use Statute could apply to his claims, the law only applies to privately owned lands and the Defendants have not established that the accident

8

occurred on private land. I begin with whether the Plaintiff's claims fall within the scope of the Recreational Land Use Statute and then turn to the Plaintiff's argument that the law only applies to privately owned lands.

### A.   Whether Plaintiff's Claims are Premises Liability Claims

The Complaint asserts three counts. The Plaintiff alleges in Count One that Defendant Cassidy acted negligently, causing personal injury to Whitney by: (1) failing to operate the groomer in a reasonable and prudent manner; (2) "fail[ing] to use caution while operating the Groomer"; (3) "fail[ing] to stop the Groomer in a safe location"; and (4) failing to warn oncoming snowmobilers of the danger presented by the presence of the Groomer beyond their sight lines." Compl. ¶¶ 9–10. In Count Two, which is styled as a "negligent entrustment" claim, the Plaintiff alleges that Defendant MRSC is jointly negligent with Defendant Cassidy because "Defendant Cassidy was operating the Groomer with the permission of Defendant MRSC, who had the right to control the Groomer and who it permitted to operate the same." Compl. ¶ 15. In Count Three, the Plaintiff alleges that MRSC is liable for Defendant Cassidy's negligence under the doctrine of respondeat superior. He alleges that "Defendant Cassidy was operating the Groom [sic] while in the employ of the Defendant MRSC, and was otherwise under the direction, supervision and control of the Defendant MRSC." Compl. ¶ 19. While not a model of clarity, the Complaint does fairly assert that Defendant Cassidy negligently operated the groomer, that MRSC negligently entrusted the groomer to Defendant Cassidy, and that MRSC is liable for Defendant Cassidy's negligence under the theory of respondeat superior. Compl.

¶ 21.[9] In their Reply, the Defendants contend that the "Plaintiff's Complaint, on its face, quite clearly alleges Defendants' liability for the creation of a hazardous condition on land that injured Plaintiff during his recreational use of it." Reply at 3. I analyze each claim separately to determine whether it is a premises liability claim or whether it falls outside the scope of the Recreational Land Use statute.

### a. Negligent Operation of a Motor Vehicle

I start with the Plaintiff's claim for negligent operation of a motor vehicle. In Maine, negligent operation claims are reviewed as a standard negligence cause of action. *See Toto v. Knowles*, 261 A.3d 233, 236 (Me. 2021). This requires finding that four elements are met: " '(1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury.' " *Id.* (quoting *Est. of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 16, 60 A.3d 759 (Me. 2013)).

I draw from the facts alleged in the Complaint that Defendant Cassidy was operating the groomer and that his placement of the groomer on the trail caused the

---

[9] In his Opposition, the Plaintiff asserts that he "has alleged three negligence claims against Defendants which revolve around Defendant Cassidy's negligent operation of . . . the Groomer, and the Defendant MRSC's related negligent supervision, instruction and entrustment of their Groomer to their employee and/or agent Defendant Cassidy." Pl.'s Opp'n to Defs.' Mot. to Dismiss 2 (ECF No. 13). This is a restyling of the Complaint, which nowhere asserts "negligent supervision" or "negligent instruction." The closest the Complaint gets to an assertion of MRSC's own independent negligence is the negligent entrustment claim. There is one paragraph in Count Three—the respondeat superior count—that asserts: "Defendant MRSC was negligent in permitting the careless, reckless, and/or negligent operation of the Groomer under its care and control, which negligence of the Defendant Cassidy caused the accident with Plaintiff's snowmobile." Compl. ¶ 21. That best harkens back to the negligent entrustment Count, and it cannot fairly be considered either a claim for negligent supervision or negligent instruction.

10

Plaintiff's injury. The question is whether the Defendants owed any duty of care to the Plaintiff.

Section 159-A(2) removes the "duty of care to keep the premises safe for . . . use by others for recreational . . . activities" and removes the duty "to give warning of any hazardous condition, use, structure or *activity* . . ." on the premises. 14 M.R.S. § 159-A(2) (emphasis added). Section 159-A(3) makes clear that an occupant who "gives permission to another to pursue recreational . . . activities on the premises does not thereby: . . . [m]ake the person to whom permission is granted an invitee or licensee to whom a duty of care is owed." 14 M.R.S. § 159-A(3). The use of the words "activity" and "activities" in these sections suggests that occupants are relieved of duties that go beyond those arising just from a condition of the land. Operating a snowmobile and groomer to maintain the trails would be considered an "activity" conducted by an occupant on the premises. In fact, the statute expressly contemplates that "occupant" includes those engaged in maintaining trails. 14 M.R.S. § 159-A(1)(C).

Under the law in place at the time this statute was enacted, a possessor of land owed no duty to trespassers either "(a) to put the land in a condition reasonably safe for their reception, or (b) to carry on his activities so as not to endanger them." Restatement (Second) Torts § 333; *see also* Simmons, Zillman & Furbish, Maine Tort Law § 8.02; *Est. of Cilley v. Lane*, 985 A.2d 481, 486 (Me. 2009) (stating that the only duty owed to a trespasser "was to refrain from wanton, willful, or reckless behavior").

A holistic reading of the statute and the legislative history[10] suggests that the Maine Legislature: (1) relieved landowners and occupants of both the duty of care to keep premises safe and the duty to warn of any hazardous conditions or activities traditionally associated with premises liability, 14 M.R.S. § 159-A(2); and (2) made clear that even where landowners and occupants permit use of the land, they do not thereby confer on any entrant for recreational use the status of an invitee or licensee, 14 M.R.S. 159-A(3)(B). The Maine Recreational Land Use statute seems to be imposing on landowners and occupants only the duties traditionally owed to trespassers not to act willfully or maliciously. *See* 14 M.R.S. § 159-A(4)(A) (exception to the limitation of liability for "willful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity."). Interpreting the statute in this manner comports with the Legislature's goal of encouraging the opening of land for recreational use, and it is consistent with the Law Court's statement that it construes the Maine Recreational Land Use Statute broadly.

The Plaintiff, however, leans heavily on the Law Court's broad language in *Dickinson* that the Recreational Land Use Statute "only limits claims that allege premises liability." *Id.* at 306. Further, other courts have held that negligent operation of a vehicle on premises open to recreational use is outside of immunity provisions offered in other states' recreational use statutes. The Plaintiff cites *Combs*

---

[10] When a statute is ambiguous, I may consult the legislative history to resolve the ambiguity. *See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 121, 128 (1st Cir. 2019). I find the Recreational Land Use Statute to be ambiguous as to whether it applies to the negligent operation of a motor vehicle on the premises.

12

*v. Ohio Dep't of Nat. Res., Div. of Parks & Recreation,* 55 N.E. 3d 1073 (Ohio 2016), where the Ohio Supreme Court held that a park employee, who was alleged to have negligently operated a lawn mower that kicked up a rock that injured the plaintiff, did not qualify for immunity under a recreational land use statute similar to Maine's. *Id.* at 1074–75. The Defendants did not address *Combs* in their Reply.

In *Combs,* the four-judge majority cited cases from other state supreme courts (one being Maine's *Dickinson* case) as support for the idea that recreational use statutory immunity should not be extended beyond "injuries arising from the condition of the premises." *Combs,* 55 N.E. 3d at 1078 (citing *Dickinson*, 2001 ME 49, 767 A.2d 303; *Klein v. United States,* 235 P.3d 42, 49 (Cal. 2010) (concluding that premises liability does not encompass vehicular negligence occurring on the property); *Young v. Salt Lake City Corp.,* 876 P.2d 376, 378 (Utah 1994) (explaining that recreational use statute does not operate to relieve landowners of their separate duty to conduct themselves in a reasonably safe manner while on the premises); *Scott v. Wright,* 486 N.W.2d 40, 42 (Iowa 1992) (recreational use statute did not shield landowner from negligent operation of a tractor by an employee)). The three-judge dissent in *Combs* distinguished these cases on the ground that they all involved injuries that "resulted from something other than the land." *Combs*, 55 N.E.3d at 1080 (Kennedy J., dissenting).

The *Klein* case offers a detailed analysis on both sides of the issue. There, a biker in a national park in California was grievously injured by a vehicle negligently operated by a park volunteer. 235 P.3d at 44. Although the case was brought in

13

federal court under the Federal Tort Claims Act, that Act gives defendants such defenses that they would have had under state law. *Klein*, 235 P.3d at 45 (citing 28 U.S.C. § 1346(b)(1)). The federal district court found that the United States had immunity under the California recreational land use statute, a statute that is similar to Maine's. *Id*. Recognizing the importance of the issue to California, the Ninth Circuit certified to the California Supreme Court the question of whether the immunity provision of the recreational land use statute applied to "acts of vehicular negligence committed by the landowner's employee in the course and scope of his employment that cause personal injury to a recreational user of that land." *Id*. The California Supreme Court split four to three and denied immunity. *Id*. at 54.

The decision in this case will have ramifications for Maine's landowners and recreational industry, and it could affect long-standing policy judgments about risk allocation. An understanding of the statute as a whole, the common law duties for premises liability, and the legislative history suggest that the Maine Legislature intended to shift the duties owed to recreational users, regardless of whether they had permission to enter, to those associated with trespassers. *Dickinson's* broad language is helpful to the Plaintiff, but the case can be distinguished in that it involved a minor victim and no claim for negligent operation of a motor vehicle, and no activity that was specifically contemplated by the statute and associated with a condition of the land.

When all is said and done, whether Maine's Recreational Land Use Statute should shield landowners and occupants from liability for vehicular negligence is a

14

difficult question, and the parties here have offered little, if any, analysis.[11] Ultimately, I may decide to certify this question to the Maine Supreme Judicial Court. But further factual development and legal analysis should come first.[12] Accordingly, Count One survives.

### b. Negligent Entrustment

The Complaint also asserts claims for negligent entrustment. To prevail on a claim for negligent entrustment, the Plaintiff must demonstrate that the "defendant had the right to control the property in question, which was entrusted to a third party, on the occasion when the accident occurred." *Reid v. Town of Mount Vernon*, 2007 ME 125, ¶ 32, 932 A.2d 539. Unlike vicarious liability where the actions of the third person are imputed to the defendant, "negligent entrustment is based on the owner's *own* negligence, or his '*direct* negligence in entrusting the vehicle to an incompetent user.' " *Steffey v. Beechmont Invs, Inc.*, No. 3:16-CV-223, 2017 WL 3754443, at *5 (E.D. Tenn. Aug. 29, 2017) (quoting *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 555 (Tenn. 2005)). Taking as true all well-pleaded facts in the Complaint, the Plaintiff plausibly states a claim for negligent entrustment. He alleges that MRSC owned and controlled the snowmobile and entrusted the vehicle to Mr. Cassidy when the accident occurred. Compl. ¶¶ 14–16.

---

[11]   For example, the parties provide no analysis of the use of the term "activities" in the limitation of liability section; they do not deal with whether 14 M.R.S. § 159-A(5) adds anything to the analysis; and they do not grapple with the out-of-state cases and the arguments raised therein.

[12]   "Maine state law authorizes a federal court to certify questions of law to the Supreme Judicial Court of Maine sitting as the Law Court, when the questions 'may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court.' " *Good v. Altria Grp., Inc.*, 624 F. Supp. 2d 132, 135 n.1 (D. Me. 2009).

The Defendants offered no analysis of why a negligent entrustment claim should be treated as a premises liability claim on these facts. In fact, they do not discuss the negligent entrustment claim at all, dealing only with the Plaintiff's negligent supervision claim. Focusing entirely on immunity, the Defendants have not argued that the Complaint's allegations are insufficient to make out a plausible claim for negligent entrustment. *See Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013) (noting a plaintiff is not required to plead "specific facts sufficient to establish each and every element of a prima facie case" to assert a plausible claim). Accordingly, I conclude that the allegations are sufficient to survive a motion to dismiss. Count Two survives.

### c.    Negligent Instruction & Negligent Supervision

Finally, the Plaintiff contends that he is bringing a claim for negligent instruction and negligent supervision. Pl.'s Opp'n at 3. The Complaint never uses the terms "instruct" or "instruction," and it only uses the term "supervision" once when it avers that Defendant Cassidy was "under the direction, supervision, and control of the Defendant MRSC." Compl. ¶ 19. The use of the term "supervision" in paragraph nineteen establishes the basis for the Plaintiff's claim of vicarious liability under the doctrine of respondeat superior. It was only in response to the Defendants' argument that the Recreational Land Use Statute provided them with immunity, that the Plaintiff asserted that he was bringing "negligent supervision and instruction" claims, presumably to align himself with the holding of *Dickinson,* which allowed negligent instruction and supervision claims on the theory that they were not based on premises liability.

16

The Complaint alleges no facts that would allow either a claim of "negligent supervision" and "negligent instruction" to survive as a plausible cause of action. What the Plaintiff is asserting in Count Three is that MRSC is on the hook under the doctrine of respondeat superior for Defendant Cassidy's allegedly negligent operation of the groomer. The Complaint fairly alleges that Defendant Cassidy's operation of the groomer was within the scope of his employment with MRSC. Compl. ¶ 19. Under the Restatement (Second) of Agency, "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Restatement (Second) of Agency § 219.[13]

The claim against MRSC asserted in Count Three under the theory of respondeat superior survives for now to the same extent that the negligent operation claim in Count One survives.

### B. Whether the Recreational Land Use Statute Only Applies to Private Land

The Plaintiff further claims that even if his negligence claims fell under the statute, the Defendants have not shown that the accident occurred on public land as he believes § 159-A requires. Pl.'s Opp'n 3–4. He argues that "the Recreational Land

---

[13] The Defendants argue that the Plaintiff could not assert a "negligent supervision" claim because there was no "special relationship" between the Plaintiff and Defendant Cassidy or Defendant MRSC. Reply at 3. My rejection of the negligent supervision claim has nothing to do with the fact that there is no special relationship between the Plaintiff and the Defendants. For a negligent supervision claim, a special relationship is necessary where the servant is acting *outside* the scope of employment. Restatement (Second) of Torts § 317 (Comment a) ("The rule stated in this Section is applicable only when the servant is acting outside the scope of his employment. If the servant is acting within the scope of his employment, the master may be vicariously liable under the principles of the law of Agency. See Restatement of Agency, Second, Chapter 7"). That is not the case here.

17

Use statute does not apply to publicly-owned land." Pl.'s Opp'n 4 (citing *Noel v. Town of Ogunquit*, 555 A.2d 1054 (Me. 1989)). But this overstates *Noel*'s holding.

In *Noel*, the plaintiff sued the town of Ogunquit after she was injured on a beach that the town owned and operated. 555 A.2d at 1055. The town argued that the Recreational Land Use Statute barred the action. *Id.* The Supreme Judicial Court of Maine decided otherwise, stating that "[f]or two compelling reasons . . . section 159-A does not apply to publicly owned land." *Id.* at 1056. First, while the law's purpose was to encourage landowners to make land available to the public for free recreational activities, governmental entities were immune from liability and did not need such an incentive to make land publicly available. *Id.* Second, the Recreational Land Use Statute must be read in conjunction with the Maine Tort Claims Act, which was passed after the Recreational Land Use Statute and provided immunity for governmental entities from tort damages claims arising from use of publicly owned land. *Id.* Thus, if the land use statute had applied against government entities in their ownership of land, there would have been no need to include a separate publicly owned land provision in the Maine Tort Claims Act. *Id.* at 1056–57.

In *Noel*, the plaintiff sued the *town* regarding an accident on *town-owned* land. *Id.* at 1055. Here, the Defendants are not a government entity and they are not alleged to be operating on government land. Consequently, *Noel*'s reasoning is distinguishable. As private entities, the Defendants do not have the alternative governmental immunity from suit that was central to *Noel*'s holding. Because the Plaintiff's claims survive the motion to dismiss, the parties can proceed to discovery

on the issue of who owned the land where the accident occurred. I need not now decide whether the Recreational Land Use Statute applies to both public and private land.

## CONCLUSION

For the reasons stated above, I **DENY** the Defendants' motion to dismiss, but the Plaintiff is on notice that any claims based on negligent instruction, negligent supervision, or failure to warn theories are not viable.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 12th day of September, 2022.